47224, 47225.   KATOGIR v. OWEN JOIST CORPORATION; and vice versa.

SUBMITTED MAY 22, 1972—DECIDED JULY 14, 1972—
REHEARING DENIED JULY 27, 1972-

*Hester & Hester, Frank B. Hester, Richard M. Hester,* for appellant.

*Peek, Whaley & Haldi, Glenville Haldi, R. Joseph Costanzo, Jr.,* for appellee.

STOLZ, Judge. This is an action by Owen Joist Corporation against Michael Katogir, d/b/a M. K. Design & Development Company, for damages for the alleged breach of a contract dated October 28, 1969, for the manufacture and delivery to the plaintiff's South Carolina plant of two "mid-web bending machines" for use in manufacuring steel joists. The complaint alleges a breach of the specific terms of the contract as well as implied warranties, and seeks damages in the amount paid to the defendant under the contract, $41,100, plus interest and court costs. The defendant filed a counterclaim for $27,400, the balance due on the $68,500 purchase price, plus interest and court costs. The trial of the case resulted in a verdict and judgment in favor of the plaintiff for $25,000. The defendant appeals from the overruling of his motion for a new trial on the general grounds and the plaintiff cross appeals from the overruling of its motion for judgment n.o.v.

■ The contract specified that the machines, designated as "A" and "B," shall have certain performance specifications, including an approximate bend time of 10 seconds, and "will operate at least as effectively and efficiently as the mid-web bending machine previously demonstrated to buyer at seller's plant." The alleged breach of the contract arose out of the plaintiff buyer's insistence upon a certain maximum tolerance of error in the machines, which was not provided for in the contract either specifically or by reference and not specifically made known to the defendant seller until about 3 (or 7) months after the contract was executed, but which, the buyer contends, should have been included under an implied warranty of fitness for the pur-

pose intended. The evidence showed that the buyer did not check into the seller's experience in this field, that this was in fact the seller's first experience in this field and with bar joists, and that he knew nothing of tolerances. The buyer authorized the seller to build the machines based on the lay-out drawings and the seller cooperated over a period of several months in attempting to modify the machine so as to comply with the buyer's required tolerance, with the buyer and seller both periodically testing the machine. The evidence was conflicting as to the comparative effectiveness and efficiency of the prototype and manufactured machines and even as to the effectiveness and efficiency of the manufactured machine itself. The defendant testified that the bend time on machine A was approximately 8-13 seconds; the plaintiff's president testified that it was 14-16 seconds. Machine B was never assembled, although the buyer testified that he could and would have used either or both machines if they were operating within his specifications. The price of the machines was $38,000 for machine A and $30,500 for machine B, for a total price of $68,500. The plaintiff paid the defendant $22,800 of the price of machine A and $18,300 toward machine B, for a total of $41,100, or $27,400 under the $68,500 total sale price. After the plaintiff declared the contract breached, the defendant sold to another company for $30,000 machine A, which has been in operation ever since. Unassembled machine B is virtually unsalable now due to changed industry standards. The defendant testified that he had $61,000 invested in the machines when the plaintiff rejected them. Time was specified as of the essence in the contract; however, there was evidence of extensions of time, some in writing, both for delivery of certain parts and for perfection of the machine. The plaintiff never put the defendant on notice that the contractual provision for delivery time would be enforced.

Section XII of the contract provides: "This conditional sales agreement shall be considered as made and executed in the State of South Carolina construed under the laws of that state." Certified copies of several relevant sections of

the South Carolina Code of 1962 were made a part of the record at the trial of the case. It is assumed that the jury was fully and correctly charged with respect to applicable South Carolina law. There is no enumeration of error related to the charge in the record before this court.

Under the evidence admitted, and the applicable law, there were several findings that the jury might have made. They could have found (1) that the defendant breached an implied warranty of fitness for the purpose intended; (2) that the defendant breached a provision of the contract which became incorporated therein by mutual understanding and course of performance; (3) that the plaintiff breached the contract by unreasonably rejecting one or both machines; (4) that the purported agreement was not an enforceable contract because there was no meeting of the minds with regard to the important and disputed matter of allowable pitch point variation tolerances; (5) that there was no meeting of the minds as to machine A, but that the plaintiff breached the contract as to machine B by not having the defendant proceed with its assembly and delivery; and (6) that there was no meeting of the minds as to machine A, but that the defendant breached the contract as to machine B by not assembling it for delivery.

While it is difficult, if not impossible, in this case to determine exactly how the jury arrived at the particular $25,000 verdict, the facts and the law would authorize finding (5) above, for example, so that the plaintiff would be entitled to the return of the $22,800 it had paid toward the purchase price of machine A, plus some incidental expense incurred, such as the cost of shipping the machine from the plaintiff's plant back to the defendant's shop.

Since the verdict was within the range of the evidence, it will not be overturned upon the general grounds of the motion for new trial, which motion was properly overruled.

■ With regard to the plaintiff's cross appeal (Case No. 47225), since, as was held in Division 1 hereinabove, there were a number of possible findings which could have been made by the jury under the facts in evidence and the

applicable law, the evidence did not demand a finding for the full amount that the plaintiff had paid under the contract. Furthermore, as was indicated by the trial judge in his order overruling the plaintiff's motion for judgment n.o.v., the plaintiff did not except to the court's charge to the jury authorizing it to find any amount from $1 to $41,100 for the plaintiff.

For the above reasons, the trial judge did not err in overruling the defendant's motion for new trial on the general grounds and the plaintiff's motion for judgment n.o.v.

*Judgments affirmed. Bell, C. J., and Evans, J., concur.*